UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BRYAN M. GIL and MAUREEN B. GIL,

                    Plaintiffs,                    <u>MEMORANDUM AND ORDER</u>

     -against-                        CV 06-1683 (LDW) (ARL)

COUNTY OF SUFFOLK, <u>et</u> <u>al.</u>,

                    Defendants.
--------------------------------------------------------X
APPEARANCES:

       PATRICIA WEISS, ESQ.
       Attorney for Plaintiff
       Sag Harbor Shopping Cove
       78 Main Street – Suite 12
       P.O. Box.751
       Sag Harbor, New York 11963

       CHRISTINE MALAFI, SUFFOLK COUNTY ATTORNEY
       BY: RICHARD T. DUNNE, ASSISTANT COUNTY ATTORNEY
       Attorneys for Defendants
       H. Lee Dennison Building
       100 Veterans Memorial Highway
       Hauppauge, New York  11788

WEXLER, District Judge

     Plaintiff Brian Gil ("Gil") brings this civil rights action under 42 U.S.C. § 1983 against

defendants County of Suffolk, former Suffolk County Police Commissioner John C. Gallagher

("Gallagher'), Suffolk County District Attorney Thomas J. Spota ("Spota"), and various named

Suffolk County police officers and unnamed individuals, asserting claims for, <u>inter</u> <u>alia</u>, false

arrest, malicious prosecution, and excessive force.  Defendant Spota moves to dismiss all claims

against him based on the doctrine of absolute immunity.  Gil opposes the motion.

I.

For purposes of this motion, the relevant allegations of the 57-page complaint can be summarized as follows.  At approximately 3:11 a.m. on April 12, 2003, taxi driver Denis Short ("Short") radioed his dispatcher to report that he had just been robbed by two teenaged males in Farmingville, New York.  At about that time, Gil, then a 16-year-old high-school athlete, was jogging home from his girlfriend Ashley Shoenig's ("Shoenig") home about 1.5 miles from the robbery scene.  Gil was stopped by defendant Suffolk County Police Officer Mitchell Weisbrod ("Weisbrod").  Gil explained to Weisbrod that he was returning to his home in Holbrook, New York, from his girlfriend's home.  Weisbrod placed Gil in handcuffs, using excessive force in doing so, and searched him, finding no weapon, money or other property.  The police confirmed that Gil left Shoenig's house at approximately 3:10 a.m.  Nevertheless, additional police officers arrived at the scene and conducted a "showup" at approximately 3:27 a.m. by exhibiting Gil to Short, who had been transported there by defendant Suffolk County Police Officer Thomas Pryor ("Pryor").  Because of alleged suggestive procedures, including the manner and distance at which Gil was shown to Short, Short identified Gil as the robber, even though Short's description of the teenager who robbed him differed significantly from a description of Gil.  For instance, the robber was described as 5'2" tall, with "rapper" sideburns, and wearing "oversized" jeans with a belt and a blue sweatshirt, whereas Gil was 5'10" tall, clean shaven, and wearing a black knit earwarmer, grey velour sweatpants, and no belt.  As a result, Gil was arrested and taken to the precinct.  According to Gil, the police should have realized that probable cause to arrest him was lacking and that further investigation was necessary.

Gil complains of further police misconduct after he was taken to the precinct. In this respect, Gil alleges that defendant Suffolk County Detective Patrick Leslie ("Leslie") and other officers, inter alia, (1) failed to advise him of his Miranda rights; (2) refused to allow him to call his parents; (3) taunted and ridiculed him in an attempt to frame him; and (4) refused to take statements from Shoenig and her father, a Nassau County deputy sheriff. He further alleges that Short was also taken to the precinct, where Leslie and other officers urged Short to change his earlier description of the robber so that it would more closely reflect a description of Gil. Eventually, Short was "pressured" to sign a "fabricated" written statement prepared by Leslie, even though the statement did not accurately reflect Short's account to police.

Leslie prepared a felony complaint based on Short's "coerced" statement, and

> falsely misled and importuned prosecutorial authorities to pursue
> charges against [Gil] by a Felony Complaint that was so 'santized'
> of all exculpatory material information that it no longer resembled
> anything similar to the description of the robber that Denis Short
> had first given PRYOR and/or later given to DETECTIVE
> LESLIE and other police officers.

Complaint ¶ 46. Gil further alleges that Leslie intentionally provided misleading information and withheld information from the felony complaint and from Spota that completely exonerated him.

Gil asserts that the assistant district attorney ("ADA") assigned to the case realized or should have realized, inter alia, (1) that probable cause to arrest Gil was lacking; (2) that Short's identification of Gil was "lacking in 'probable cause'"; (3) that Gil's alibi testimony was corroborated by Shoenig and her father; and (4) that

> police had not provided the District Attorney's Office with all of
> the information that should have been provided under Brady v.
> Maryland and were instead deliberately and intentionally

> committing the crime of interfering with governmental
> administration by withholding documents and information that had
> been gathered and ought to have been immediately revealed to the
> District Attorney's Office.

Complaint ¶ 59.  According to Gil, the ADA should have sufficiently investigated the facts and

advised Gallagher, inter alia, that probable cause was lacking and that further police

investigation was necessary.  Instead, the ADA proceeded with an arraignment on April 13,

2003, at which time Gil was released on bail.

On July 8, 2003, Gil filed a notice of claim against Suffolk County and others,

complaining about his false arrest and the use of excessive force.  In response, defendant Suffolk

County Police Lieutenant James Connell ("Connell"), of the police department's Internal Affairs

Bureau, was assigned to investigate the claim.  According to Gil, defendants retaliated against

him for filing the claim by, inter alia, pushing ahead with the prosecution and presenting the

charges to a grand jury to avoid making payment on his claim.  Gil asserts that Spota and/or one

or more of his ADAs presented the case to the grand jury in a fraudulent and misleading manner

that violated his constitutional rights, and resulted in an indictment charging him with two counts

of robbery.  Ultimately, Gil was tried in January 2006, resulting in his acquittal on both counts.

Soon thereafter, Gil filed this action, asserting claims for, inter alia,  false arrest,

malicious prosecution, and excessive force.


## II.

Spota argues that Gil's allegations against him relate only to his functions as an advocate

during and in connection with the post-arrest phase of criminal proceedings against Gil,

including presentation of the matter to the grand jury and the trial of the case.  These functions,

Spota argues, are all subject to absolute immunity.  Gil concedes that Spota has absolute

immunity for his functions as an advocate, that is, "conduct 'intimately associated with the

judicial phase of the criminal process,' " Hill v. City of New York, 45 F.3d 653, 661 (2d Cir.

1995) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  Such functions include initiating

a prosecution and presenting the case at trial, as well as preparing for those functions, such as

evaluating and organizing evidence for presentation before a grand jury or at trial.  Id.

Gil clarified at oral argument that his claim against Spota is limited to Spota's failure to

properly train his ADAs, resulting in a denial of Gil's constitutional rights.  In this respect, the

complaint alleges that

> [the County and Spota] deliberately and intentionally failed to
> constitutionally fulfill their investigative and administrative duties
> to provide accuseds such as [Gil] with fair trials by obtaining full
> and complete information from all police officers involved with
> [Gil's] arrest, the various interviews of Denis Short, and the alibi
> statements of Ashley Shoenig and her father . . . .
>
> . . .
>
> . . . [Spota's] Office custom, practice and policy do not require,
> demand, and insist that police provide them with all police reports,
> eyewitness reports, and alibi reports so that each A.D.A. can
> evaluate the merits of a case against an accused prior to
> arraignment and prior to presentment to the Grand Jury.

Complaint ¶¶ 145, 152 (emphasis in original); see also id. ¶¶ 159, 165.  Gil further alleges that

Spota deliberately failed to "adequately administrate" his office and employees in that he failed,

inter alia, (1) to train and supervise his ADAs in their "obligations to avoid the use of perjured

testimony and to consider misleading statements that are 'fabricated' by police personnel"; and

(2) to train ADAs in complying with the government's obligations under Brady v. Maryland.

Complaint ¶¶ 78-82, 84-85.  Gil asserts that Spota "permit[ted] a 'Don't Ask/Don't tell'

administrative and investigative policy that predictably ensures that police officers will withhold exculpatory evidence . . . from [Spota] and his assistants at the critically important early stages of investigations."  Plaintiff's Memorandum of Law in Opposition to District Attorney Spota's Fed. R. Civ. P. 12(b)(6) Motion, at 6-7; see also id. at 18; Complaint ¶ 148.  According to Gil, this alleged failure to train is an administrative and investigative function subject to qualified – not absolute – immunity.  Hill, 45 F.3d at 661 ("When a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent.  Immunity does not protect those acts a prosecutor performs in administration or investigation not under taken in preparation for judicial proceedings.").

Spota argues that this alleged conduct fails to state a claim against him, and, at best, states a claim for municipal liability against the County.

III.

Upon consideration, the Court agrees with Spota that Gil's allegations of failure to train by Spota, as district attorney, are not sufficient to state a claim against Spota in his individual capacity and circumvent the bar of absolute immunity.  See, e.g., Lawson v. City of New York, 2002 WL 1313644, *2 (S.D.N.Y. June 13, 2002) ("Plaintiff attempts to get around the problem of absolute immunity by alleging that [the district attorney] has failed to properly train the [ADAs] in his office so that a pattern has developed in which individuals are prosecuted even though there is evidence that they are not guilty.  However, it would defeat the purpose of the doctrine of prosecutorial immunity, 'preventing perpetual suits against prosecutors for the performance of their duties,' to permit a plaintiff to avoid the bar of that doctrine through the

simple expedient of alleging that the prosecutor's conduct in his case was but one of several similar cases.").  As Spota argues, while these allegations may state a claim for municipal liability, see Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993); Walker v. City of New York, 974 F.2d 293, 300 (2d Cir. 1992), determination of their sufficiency in that respect is not presently before the Court.  Accordingly, the Court finds that the complaint is not sufficient to state a claim against Spota.

IV.

Accordingly, defendant Spota's motion to dismiss is granted.  The Clerk of Court is directed to terminate the motion.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        July 9, 2007