UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BRYAN M. GIL and MAUREEN B. GIL,

       Plaintiffs,                MEMORANDUM AND ORDER

  -against-                         CV 06-1683 (LDW) (ARL)

COUNTY OF SUFFOLK, et al.,

       Defendants.
---------------------------------------------------------X
APPEARANCES:

    PATRICIA WEISS, ESQ.
    Attorney for Plaintiffs
    Sag Harbor Shopping Cove
    78 Main Street – Suite 12
    P.O. Box.751
    Sag Harbor, New York 11963

    CHRISTINE MALAFI, SUFFOLK COUNTY ATTORNEY
    BY: RICHARD T. DUNNE, ASSISTANT COUNTY ATTORNEY
    Attorneys for Defendants
    H. Lee Dennison Building
    100 Veterans Memorial Highway
    P.O. Box 6100
    Hauppauge, New York 11788

WEXLER, District Judge

    Plaintiffs Brian Gil ("Gil") and Maureen Gil bring this action under 42 U.S.C. § 1983 against defendants County of Suffolk (the "County"), former Suffolk County Police Commissioner John C. Gallagher, Suffolk County Police Detective Patrick Leslie ("Detective Leslie"), Suffolk County Police Lieutenant James Connell ("Lieutenant Connell"), and Suffolk County Police Officers Mitchell Weisbrod ("Officer Weisbrod") and Thomas Pryor ("Officer Pryor"), asserting claims for, inter alia, false arrest, malicious prosecution, conspiracy and

excessive force.[1]  Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Gil opposes the motion.

I.  BACKGROUND

For purposes of this motion, the evidence presented can be summarized as follows.  At approximately 3:10 a.m. on April 12, 2003, taxi driver Denis Short ("Short") reported to his cab company that he had just been robbed at gun point by two individuals in Farmingville, New York.  According to the 911 report, the 911 dispatcher's description put over the air referred to the assailant as a white male, 5'2" tall, wearing a mask and blue hooded shirt.  Officers Weisbrod and Pryor assert that the dispatcher referenced a blue hooded "sweatshirt."  In response to the dispatch, Officer Pryor located Short at Hetty's Path and South Coleman Road in Farmingville.  Short reported the incident and described the assailant to Officer Pryor.  In the meantime, Officer Weisbrod observed from his police vehicle a male – later identified as Gil, then 16 years old – in the general vicinity run off the road and duck behind a tree.  Gil maintains that he left the road and went behind the tree because he did not want to be bothered by anybody.  Officer Weisbrod exited his police vehicle, drew his weapon, and directed the male to come out from behind the tree.  Officer Weisbrod asserts that he handcuffed and then frisked the subject, who turned out to be Gil.  Gil, however, claims that he was frisked, then handcuffed.  Gil further maintains that he explained to Officer Weisbrod that he just came from his girlfriend's house and was on his way home and that Officer Weisbrod could see that Gil was cooperative and not nervous.  Gil adds

---

[1]Suffolk County District Attorney Thomas J. Spota ("Spota") was also named as a defendant in this action.  By Memorandum and Order, dated July 9, 2007, this Court dismissed all claims against Spota based on his defense of prosecutorial immunity.

that Officer Weisbrod found no weapon or money in his possession, and that Officer Weisbrod told Gil that he would have him "out of here quickly or shortly," Deposition of Bryan Gil, at 35 (Defendant County of Suffolk's Statement Pursuant to Local Rule 56.1, Ex. D).  In any event, Officer Weisbrod reported that he had a subject in custody, and Officer Pryor then drove Short to where Gil was located.  At 3:27 a.m. – approximately 17 minutes from Short's report of the robbery and, therefore, less from when Officer Weisbrod detained Gil – Short positively identified Gil as the assailant with the gun.

Gil maintains that the circumstances suggest that the show-up identification was untrustworthy.  In this respect, Gil asserts that Short's description of the robber differed significantly from Gil's description that night.  For instance, the robber was described as 5'2" tall wearing a mask and blue hooded shirt, whereas Gil was 5'9" tall and wearing, inter alia, a black knit earwarmer and black hooded sweatshirt.  Gil asserts that the show-up scene was

> artificially created by Officer Weisbrod and other SCPD officers by posing Gil as leaning against the police vehicle, by keeping Gil in handcuffs, by Officer Pryor telling the victim, essentially, that the SCPD had caught the robber, by keeping the victim across the street from where Gil was held on a misty, foggy night in a dimly lit area so that Gil's face and height was [sic] not clearly visible to the victim.

Plaintiffs' Statement of Disputed Facts Precluding Defendants' Rule 56(b) Motion ("Plaintiffs' Statement") ¶ 2.

Moreover, Gil maintains that the SCPD failed to adequately train and supervise its field officers to conduct a proper show-up and failed to adhere to the Manual for Police in the State of New York in connection with the show-up of Gil.  In this respect, he asserts that, before the show-up, the police officer defendants, Sergeant Vincent DiResta, and other officers not named

herein as defendants failed, <u>inter alia</u>, to inform Short that the suspect may not be the person who committed the offense and to write down the victim's statements. In any event, following Short's identification of Gil, Gil was arrested and taken to the precinct.

At the precinct, Detective Leslie processed Gil for the felony robbery charge, during which time Detective Leslie took a statement from Short concerning the incident and show-up identification. In the statement, transcribed by Detective Leslie and signed by Short, Short, <u>inter alia</u>, confirmed his show-up identification of Gil.

Gil maintains that Detective Leslie deliberately coached Short in connection with Short's statement by repeatedly interrupting Short with questions and dialogue in the guise of clarification, intentionally rephrased what Short initially told the officers on the scene, and refused to take an alibi statement from Gils' girlfriend, Ashley Schoenig, at the precinct despite knowing that she was Gil's alibi and that she was available to make her alibi statement. He also maintains that Detective Leslie, <u>inter alia</u>, (1) failed to note whether he gave Gil his Miranda warnings; (2) did not allow Gil to make a phone call for seven hours after his arrest and for over three-and-one-half hours after he told Detective Leslie he wanted a lawyer; and (3) delayed Gil's arraignment for approximately 24 hours after his arrest paperwork was processed to allow the police to find evidence linking Gil to a crime that they knew he did not commit.

Thereafter, Gil was indicted for the robbery of Short. Gil maintains that Officer Weisbrod falsely testified and deliberately misled the grand jury by purposefully misstating the location of the stop and Gil's detention and by falsifying the description of the robber to more accurately portray Gil's characteristics as consistent with Short's identification. According to Gil, Officer Weisbrod testified falsely to the grand jury in retaliation for Gil's filing of a notice

of claim against the County and others in July 2003 and "to further his own personal goals" as he had already received a commendation for Gil's arrest prior to testifying.  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion Pursuant to Fed.R.Civ.P. Rule 56 ("Plaintiffs' Mem."), at 22.

Gil asserts that Detective Leslie also retaliated against him for filing the notice of claim. In this respect, he asserts that Detective Leslie provided false information to the Suffolk County Police Department's ("SCPD") Internal Affairs Bureau during its investigation by Lieutenant Connell of police conduct in connection with the robbery.

After a hearing in the underlying criminal action, the trial judge suppressed Short's identification as unduly suggestive.  The district attorney appealed and the Second Department reversed, holding:  "The identification procedure in this case was not improper merely because [Gil] was handcuffed at the time that he was displayed to the victim.  Nor was the procedure improper merely because the victim had been told that the police had a suspect in custody." People v. Gil, 803 N.Y.S.2d 634, 635 (2d Dep't 2005) (citations omitted) (citing People v. Armstrong, 783 N.Y.S.2d 134, 136 (2d Dep't 2004) (holding that "a showup identification is permissible if reasonable and not unduly suggestive," and that a show-up is not unduly suggestive as a matter of law even if the defendant is "identified while handcuffed and seated in a patrol car").  The Second Department found that the

> police had reasonable suspicion to pursue, stop and detain [Gil] based upon . . . [a] broadcast which provided ... a general description [and based on] the close proximity of the defendant to the site of the crime, and the short passage of time between the crime [and the defendant's stop].  [Gil's] unusual behavior in running across the street and ducking down behind a tree or bushes added to the reasonable suspicion that justified [Gil's] detention

> pending the victim's prompt 'show-up' identification of him as one of the robbers.

Gil, 803 N.Y.S.2d at 635 (internal quotations and citations omitted). After a bench trial, Gil was acquitted.

Gil and his mother, Maureen Gil, then commenced this action. In addition to Gil's claims for false arrest, malicious prosecution, conspiracy and excessive force, Gil asserts a First Amendment retaliation claim and Maureen Gil asserts a claim for "interfering with her rights to parent and see her arrested teenage son while he was in police custody for about 30 hours." Plaintiffs' Mem. at 24.

As for Gil's retaliation claim, this claim appears to be based, in part, on the alleged retaliatory conduct of Officer Weisbrod and Detective Leslie following Gil's filing of the notice of claim. In addition, Gil maintains that Lieutenant Connell and Commissioner Gallagher retaliated by conspiring and engaging in unlawful conduct in connection with the internal affairs investigation by, inter alia, (1) failing to advise Gil of his right to remain silent when he was requested to come in for an interview with Internal Affairs; (2) failing to interview all police officers involved in Gil's arrest; and (3) requesting the district attorney's office to engage in "heightened prosecutorial activity and immediately present charges to the Grand Jury without waiting for any report of [Lieutenant Connell's] internal investigation to determine if any information had been withheld from the District Attorney's Office." Complaint ¶ 123; see id. ¶¶ 117-29.

As for Maureen Gil's claim, plaintiffs maintain that defendants interfered with her

> constitutionally protected rights (1) to personally visit with and talk to her minor teenage son while he was held in police custody without being arraigned for over 30 hours, and (2) causing her to

>    spend $50,000 in legal fees [and other costs] to provide a defense
>    for [Gil], who did not commit any crime and should not have been
>    arrested or prosecuted . . . because there was no probable cause.

Plaintiffs' Statement ¶ 16.

Defendants move for summary judgment. As for the false arrest and malicious prosecution claims, defendants argue that they must be dismissed on the ground that there was probable cause to arrest and prosecute Gil and based on the defenses of collateral estoppel and qualified immunity. Defendants argue that the remaining claims must be dismissed as a matter of law and/or fact.

## II. DISCUSSION

A. <u>Summary Judgment Standard</u>

A party seeking summary judgment has the burden of establishing that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); <u>Anderson v. Libery Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986). In defending against a motion for summary judgment, the non-moving party may not rely on mere allegations, but must submit some evidence, by affidavits or otherwise, showing a genuine issue of material fact. Fed.R.Civ.P. 56(e); <u>Anderson</u>, 477 U.S. at 249. In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962); <u>Hawkins v. Steingut</u>, 829 F.2d 317, 319 (2d Cir. 1987).

B. False Arrest Claims

To prevail on a § 1983 claim for false arrest, a plaintiff must prove that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not "otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); see Danielak v. City of New York, 2005 WL 2347095, *6 (E.D.N.Y. Sept. 26, 2005), aff'd mem., 209 Fed. Appx. 55 (2d Cir. 2006); Coyle v. Coyle, 302 F. Supp. 2d 3, 7 (E.D.N.Y. 2004). The final element of the claim is negated if there was probable cause for the arrest; in other words, probable cause is an absolute defense to a false arrest claim. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002); Singer, 63 F.3d at 118-19; Gathers v. White, 2007 WL 446755, at *4 (E.D.N.Y. Feb. 8, 2007); Danielak, 2005 WL 2347095, at *6.

Probable cause to arrest exists where an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Caldarola, 298 F.3d at 162; see Singer, 63 F.3d at 119; Danielak, 2005 WL 2347095, at *6; Coyle, 302 F. Supp. 2d at 7. The probable cause determination requires a court to consider the facts available to the officer at the time of, and immediately prior to, the arrest. Caldarola, 298 F.3d at 162. Probable cause to arrest exists where an officer's information is derived from a putative victim of a crime " 'who it seems reasonable to believe is telling the truth.' " Id. at 163 (quoting Miloslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y.1992), aff'd, 993 F.2d 1534 (2d Cir. 1993)). Where an "unquestionably honest citizen comes forward with a

report of criminal activity . . . rigorous scrutiny of the basis of his knowledge" is unnecessary. Id.

By contrast, in Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court "held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). Under this standard, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981). An officer also may conduct a limited search for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual . . . . [T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.

Gil argues that the circumstances did not provide a sufficient basis for officer Weisbrod to initially stop and detain him, given his demeanor and explanation of his conduct and given the discrepancy between Short's description of the robber and Gil's appearance that night. Gil also argues that the show-up identification was unduly suggestive and unreliable, given the manner and distance at which Gil was shown to Short and given the discrepancy between Short's description of the robber and Gil's appearance that night. According to Gil, the police should have realized that probable cause to arrest him was lacking, and that further investigation was necessary. More specifically, Gil asserts that only a

> "plainly incompetent" or deliberately dishonest police officer would find the victim's "positive identification" of Gil to have any convincing veracity, given the self-evident contradictions in the victim's prior statements on matters that did not involve any

> special ability to describe height, color or areas of the robber's facial features that were covered.

Plaintiffs' Mem. at 9.

Upon consideration, the Court concludes that there is no genuine issue of material fact as to whether Officer Weisbrod had reasonable suspicion to initially stop and detain Gil for the relatively short period of time it took to conduct the show-up identification or as to whether probable cause existed to arrest Gil following the show-up identification. Officer Weisbrod had a sufficient basis for stopping and detaining Gil based on the dispatcher's broadcast of the perpetrator's general description and Officer Weisbrod's observation of Gil's appearance and conduct in close proximity to, and only minutes after, the alleged armed robbery. Officer Pryor drove Short to where Officer Weisbrod detained Gil only minutes after Gil was detained to conduct a show-up. The total period of detention until the show-up was only a matter of minutes (clearly, no more than 17 minutes from the report of the robbery and, therefore, less from the time Gil was stopped and detained), and done to enable a prompt identification (or not) at or very near the location of the crime scene and victim. Moreover, the force used was reasonable under the circumstances for stopping and detaining Gil, given the report of the armed robbery. Under these circumstances, the detention did not violate Gil's constitutional rights. See, e.g., Dempsey v. Town of Brighton, 749 F. Supp. 1215, 1224-26 (W.D.N.Y. 1990) (holding prolonged Terry stop reasonable where police, who knew armed robbery had taken place, handcuffed suspects briefly, conducted pat-down frisk for weapons, and transported suspects to nearby crime scene for show-up identification), aff'd, 940 F.2d 648 (2d Cir. 1991); see also People v. Hicks, 508 N.Y.S.2d 163 (N.Y. 1986) (holding detention and transportation of suspect to crime scene for show-up was within bounds of lawful investigatory stop where police knew robbery had been

committed, period of detention was brief, crime scene was very close, procedure was used to confirm or dispel suspicion quickly, and no proof existed of available, significantly less intrusive means to accomplish same purpose).

As for probable cause to arrest, even viewed in a light most favorable to Gil, the evidence does not suggest that it was unreasonable for the officers to believe that Short was telling the truth in positively identifying Gil as the robber. Notwithstanding Gil's arguments to the contrary, the defendant officers did not have to conduct a rigorous investigation of the basis of Short's knowledge of the robbery. Moreover, the evidence does not suggest that the show-up identification was so flawed as to undermine probable cause. Short's subsequent statement confirming that Gil was the one who robbed him, along with the show-up identification, conclusively establish probable cause to arrest, defeating Gil's claim for false arrest following the show-up identification. Despite his contentions, Gil presents no evidence to support his conclusory assertions that Detective Leslie acted in bad faith in connection with Short's subsequent statement or otherwise concerning Gil.

Defendants also argue that Gil is collaterally estopped from challenging the reliability of Short's identification of Gil since the issue was fully and fairly litigated in the state court. Gil argues that he should not be estopped from challenging that determination because the matter was not fully and fairly litigated.

As noted above, after a pretrial hearing in the underlying criminal action, the trial judge initially suppressed Short's identification as unduly suggestive. The Second Department reversed that determination on appeal. Gil argues that the Second Department's written decision is not entitled to preclusive effect because it neither mentioned the analytical framework of Neil

v. Biggers, 409 U.S. 188 (1972), nor made any factual findings regarding the suggestiveness or reliability of the show up.

A federal court must give a state court judgment the same preclusive effect that it would have in the courts of that state. Colon v. Coughlin, 58 F.3d 865, 869 n.2 (2d Cir. 1995); see also Green v. Montgomery, 219 F.3d 52, 55 (2d Cir. 2000). In New York, collateral estoppel (issue preclusion) applies only "if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Colon v. Coughlin, 58 F.3d at 869. The party opposing issue preclusion has the burden of showing an absence of a full and fair opportunity to litigate that issue. Id.

Here, the issue decided by the Second Department is identical to the issue Gil now raises, that is, whether the show-up identification was unduly suggestive and unreliable. That issue was actually and necessarily decided in the prior proceeding, and there is no indication that Gil was denied a full and fair opportunity to litigate the issue through appeal.

Accordingly, because probable cause existed to arrest Gil, defendants are entitled to summary judgment as to Gil's false arrest claims.

C. Malicious Prosecution Claim

To prevail on a § 1983 claim for malicious prosecution, a plaintiff must prove: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) a favorable termination of the proceedings; (3) lack of probable cause for commencement of the proceeding; and (4) the defendant acted with actual malice. Russell v. Smith, 68 F.3d 33, 35 (2d Cir. 1995); see Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). Defendants argue that Gil is unable to

prove the lack of probable cause.

Based on the Court's determination that the defendant police officers had probable cause to arrest Gil, Gil's malicious prosecution claim against them fails. See Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

Moreover, in New York, a grand jury indictment creates a rebuttable presumption of probable cause. Colon v. City of New York, 468 N.Y.2d 453, 455-56 (N.Y. 1983); Lee v. City of Mount Vernon, 429 N.Y.S.2d 557, 557 (N.Y. 1980). A plaintiff has the burden of rebutting this presumption by showing that "the indictment was produced by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003) (quoting Colon v. City of New York, 468 N.Y.2d at 456); Ramashwar v. City of New York, 231 Fed. Appx. 26 (2d Cir. 2007); see also Colon v. City of New York, 468 N.Y.S.2d at 456 ("The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the grand jury or to the district attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith."); Brown v. City of New York, 306 F. Supp. 2d 473, 480 (S.D.N.Y. 2004); Santiago v. City of Rochester, 796 N.Y.S.2d 811, 812 (4th Dep't 2005). Mere conjecture and surmise that an indictment was procured as a result of conduct undertaken by defendants in bad faith cannot overcome the presumption of probable cause created in an indictment. See Colon v. City of New York, 468 N.Y.S.2d at 456; Lee, 429 N.Y.S.2d at 558.

Gil does not offer evidence sufficient to overcome the presumption raised by the grand jury's indictment of him for the robbery of Short. As noted above, although Gil maintains that

Officer Weisbrod falsely testified and deliberately misled the grand jury, he fails to present any evidence demonstrating that the testimony elicited to the grand jury was the result of fraud, perjury, or bad faith. Rather, Gil relies on conclusory and speculative allegations of what he believes to be Officers Weisbrod's motives and unconstitutional practices of the SCPD for arresting teenagers to raise an inference of bad faith. Any alleged failure to conduct further investigation or apply all procedures that could have been followed does not amount to fraud, bad faith or the suppression of evidence and is insufficient to overcome the presumption. See Colon v. City of New York, 468 N.Y.S.2d at 456; Lee, 429 N.Y.S.2d at 558; Santiago, 796 N.Y.S.2d at 812. Additionally, variations in a witness's testimony point only to a difference in the perception of the incidents observed, not perjury. Colon v. City of New York, 468 N.Y.S.2d 78 at 456.

Moreover, Gil's evidence is not sufficient to establish another essential element, that is, that any police misconduct in prosecuting Gil was intentional and motived by actual malice.

Accordingly, because Gil is unable to prove lack of probable cause and actual malice, defendants are entitled to summary judgment as to Gil's malicious prosecution claim.

D. Qualified Immunity Defense

Alternatively, defendants argue that Gil's false arrest and malicious prosecution claims are barred by qualified immunity. Qualified immunity is " 'an entitlement not to stand trial or face the other burdens of litigation.' " Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity bars an action against a government official performing discretionary functions where the conduct alleged " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.' " Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In a case alleging false arrest, qualified immunity exists where the defendant police officer had "arguable probable cause" to arrest. Caldarola, 298 F.3d at 162. Arguable probable cause exists where it was either objectively reasonable to believe that probable cause existed or officers of reasonable competence could disagree on the existence of probable cause. Escalera, 361 F.3d at 743; see also Caldarola, 298 F.3d at 162 (arguable probable cause exists where officer holds reasonable, albeit mistaken, belief as to probable cause). Police officers with probable cause to arrest are also entitled to qualified immunity as to malicious prosecution claims, because after arrest the matter is in the hands of the prosecutorial authorities making the decision to continue with the prosecution and outside of police discretion. See Danielak, 2005 WL 2347095, at *9.

Upon consideration, the Court concludes that there is no genuine issue of material fact as to whether arguable reasonable suspicion existed for the initial stop and detention to support qualified immunity. Similarly, there is no genuine issue of material fact as to whether arguable probable cause for arrest after the show-up identification existed to support qualified immunity. Even if the arresting officers were somehow mistaken as to their beliefs regarding reasonable suspicion to stop and detain or regarding probable cause to arrest, it was certainly reasonable for them to believe that reasonable suspicion existed to stop and detain and that probable cause existed to arrest. Accordingly, the arresting officers are entitled to dismissal of the false arrest claims based on qualified immunity.

Moreover, the arresting police officers are also entitled to qualified immunity as to the

malicious prosecution claim because the matter was in the hands of the prosecutorial authorities making the decision to continue with the prosecution. Accordingly, the arresting officers are entitled to dismissal of the malicious prosecution claim based on qualified immunity.

E.  Conspiracy Claim

To prove a conspiracy claim, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

Gil fails to provide sufficient evidence to support a conspiracy claim against defendants. Indeed, Gil offers no more than vague and conclusory assertions of conspiracy, which are not even sufficient to withstand a motion to dismiss. See Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993); Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990); Fariello v. Rodriguez, 148 F.R.D. 670, 677 (E.D.N.Y. 1993), aff'd, 22 F.3d 1090 (2d Cir. 1994).

Accordingly, defendants are entitled to summary judgment as to Gil's conspiracy claim.

F.  Excessive Force Claim

A police officer's use of force is excessive if it is objectively unreasonable in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. Graham v. Connor, 490 U.S. 386, 397 (1989). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue [and] whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000).

Gil maintains that Officer Weisbrod used excessive force during his arrest. Specifically,

Gil argues that the force used was excessive because of the marks left on his wrist and because he was, inter alia, calm and cooperative, not a flight frisk, not a danger to himself or others, and had no weapon. Gil further argues that Officer Weisbrod's decision to leave handcuffs on Gil through the time of the show-up is a "type of seizure by 'Excessive Force' causing 'damages.'" Plaintiffs' Mem. at 20.

The issue is not what Gil believed, but whether the use of force was "objectively reasonable" in light of the circumstances. Here, the officers were responding to an alleged armed robbery of a victim held up at gun point. The Court concludes that there is no genuine issue of material fact as to whether it was objectively reasonable for the defendant arresting officers to believe that a suspect in an armed robbery posed a danger to them and to others and that handcuffing the suspect would be reasonable. The evidence does not suggest that Gil faced anything other than routine handcuffing at the time of his arrest. Routine handcuffing "at the time of an arrest, absent something more, cannot constitute a cognizable excessive force claim." Stokes v. City of New York, 2007 WL 1300983, at *11 (E.D.N.Y. May 3, 2007). "Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). In Esmont, the court noted that it found no case "permitting a plaintiff to establish an excessive force claim based on tight handcuffing in the absence of a request to loosen them." Id. at 215. Here, Gil made no claim that the handcuffs were too tight or that he suffered any physical injury because of the handcuffing. Under these circumstances, Gil evidence is insufficient to establish a claim for excessive force.

Accordingly, defendants are entitled to summary judgment as to Gil's excessive force

claim.

G. Other Claims

Plaintiffs argue that defendants' moving papers failed to address Gil's "First Amendment retaliation claim" and Maureen Gil's claim "for interfering with her rights to parent and see her arrested teenage son while he was in police custody." Plaintiffs' Mem. at 24-25. In their reply papers, defendants argue that these claims also fail as a matter of law and/or fact.

As for Gil's First Amendment retaliation claim, this claim fails based on this Court's determination that there was probable cause to arrest and prosecute Gil and because Gil fails to present anything more than vague, conclusory and speculative allegations as to the defendant police officers' motives and misconduct.

As for Maureen Gil's claim, she fails to cite any case recognizing such a claim in these circumstances. Moreover, the existence of probable cause to arrest and prosecute Gil negate any claim for legal fees and other costs in connection with Gil's arrest and prosecution.

H. Claims Against the County

Because Gil has no viable claim against any individual defendant (or any police officers "who are not individually named as defendants," Plaintiffs' Mem. at 25) on any of his claims, any claims against the County must also be dismissed. See Escalera, 361 F.3d at 749; Cogswell v. County of Suffolk Deputy Sheriff's Dep't, 375 F. Supp.2d 182, 189 (E.D.N.Y. 2005).

### III. CONCLUSION

For the above reasons, defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for defendants and to close the file in this action.

SO ORDERED.

                                      _____/s/_____
                                      LEONARD D. WEXLER
                                      UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        November 6, 2008